FILED
2006 Jun-29  AM 10:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| HOWARD STANLEY, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Civil Action No. CV-05-S-112-NW** |
| | ) | |
| INTERNATIONAL PAPER | ) | |
| COMPANY, and WAUSAU | ) | |
| BENEFITS, INC., | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

This action is before the court upon defendant's motion for summary judgment (doc. no. 11). The relevant facts and legal authority are not disputed.[1]

Plaintiff brought suit against defendants, International Paper Company ("IP") and its claims administrator, Wausau Benefits, Inc. ("Wausau"), claiming entitlement to Sickness & Accident ("S&A") benefits because of his alleged inability to perform

---

[1] Pursuant to the court's Initial Order:

Any statements of fact that are disputed by the non-moving party must be followed by a specific reference to those portions of the evidentiary record upon which the disputation is based. *All material facts set forth in the statement required of the moving party will be deemed to be admitted for summary judgment purposes unless controverted by the response of the party opposing summary judgment.*

Doc. no. 5, Appendix II at *iv* (emphasis in original). Plaintiff expressly admitted most of defendants' statement of facts. In the limited instances when plaintiff attempted to dispute defendants' statement of facts, plaintiff failed to specifically reference any portions of the evidentiary record that supported his version of the disputed facts as required by the Initial Order. Thus, plaintiff's attempt to direct this court to disputed facts was ineffectual.

the functions of his job as a result of post traumatic stress disorder ("PTSD").
Plaintiff also claimed breach of fiduciary duty and entitlement to long-term disability
("LTD") benefits.[2]

## PART ONE

*Summary Judgment Standard*

Federal Rule of Civil Procedure 56(c) provides, in part, that summary judgment
not only is proper, but also that it "shall be rendered forthwith if the pleadings,
depositions, answers to interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue as to any material fact and that
the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).
Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment,
after adequate time for discovery and upon motion, against a party who fails to make
a showing sufficient to establish the existence of an element essential to that party's
case, and on which that party will bear the burden of proof at trial."  *Celotex Corp.
v. Catrett*, 477 U.S. 317, 322(1986).

> In making this determination, the court must review all evidence and
> make all reasonable inferences in favor of the party opposing summary
> judgment.
>
> The mere existence of some factual dispute will not defeat
> summary judgment unless that factual dispute is material to an issue

---

[2]*See* doc. no. 1 (complaint).

2

> affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting

*Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)); *see also United States v.*

*Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (*en banc*).

### PART TWO

*Summary of Relevant Facts*

Plaintiff began his employment with IP on October 18, 1971.[3]  Plaintiff's essential job functions included carrying lubricants to equipment; oiling, greasing, or otherwise lubricating the equipment; and changing filters.[4]  Plaintiff began receiving treatment for PTSD in 2001.[5]  Plaintiff's last date of active employment was February 13, 2004.[6]

Despite his 2001 PTSD diagnosis, plaintiff actively worked prior to February 14, 2004.[7]  Wausau submitted Plaintiff's medical records for independent physician review by Barbara H. Center, M.D., Board Certified in Psychiatry.[8]  Dr. Center

---

[3]*See* doc. no. 12 at 1, SOF 1.

[4]*See id*. at 2, SOF 3.

[5]*See id*., SOF 4.

[6]*See id*., SOF 2.

[7]*See id*. at 2, SOF 4-5.

[8]*See* doc. no. 12 at 7, SOF 44.

conducted a thorough review of plaintiff's medical records, plaintiff's job description, and the Plan, and discussed plaintiff's case with his nurse practitioner, Sondra Wilder.[9]

The majority of plaintiff's medical records consisted of progress notes from a VA outpatient PTSD training program, documenting plaintiff's participation in a variety of training classes.[10]  These notes also document plaintiff's active, positive interactions with others in his group sessions, in contrast to plaintiff's self-report of difficulty being around others.[11]

Plaintiff's chart notes failed to document mental status exam findings or specific psychiatric symptoms that would render plaintiff unable to perform his job.[12] A January 22, 2004 psychiatric examination, conducted by VA Nurse Practitioner Wilder after a thirty-minute session with plaintiff, contains plaintiff's self-report of increased irritability at work due to his placement in an environment where he had to interact with co-workers, and of increased nightmares.[13]  Plaintiff was not homicidal, suicidal, hallucinatory, delusional, or paranoid.[14]  His thought processes were logical

---

[9]*See id.*, SOF 45.

[10]*See* doc. no. 12 at 7, SOF 41.

[11]*See id.*, SOF 42.

[12]*See id.* at 4-6, SOF 18-40.

[13]*See id.* at 4, SOF 18-20.

[14]*See id.* at 4, SOF 21.

and goal directed, and his insight and judgment were good.[15]

Plaintiff's February 23, 2004 medical records document a thirty-minute follow-up session with Nurse Practitioner Wilder, in which plaintiff reported that he had attempted to return to work, but could not do so because of a urinary tract infection.[16] Plaintiff reported that he had nightmares, but had no recall of them since dreaming that he ran over his five year old grandson.[17]   Again, plaintiff was not suicidal, homicidal, or hallucinating.[18]

A February 23, 2004 letter signed by Nurse Practitioner Wilder and VA Staff Psychiatrist Carlos Berry states that plaintiff was having increased difficulty concentrating on, focusing on, and completing tasks, making it difficult and hazardous for him to continue working, and concluding that plaintiff was totally and permanently disabled.[19]   The letter further states that plaintiff had frequent, recurrent thoughts and nightmares of combat experience, despite the fact that plaintiff's February 23, 2004 chart notes indicate that plaintiff had not remembered a nightmare since his dream of running over his grandson.[20]

---

[15]*See* doc. no. 12 at 5, SOF 22.

[16]*See id.*, SOF 23, 25.

[17]*See* doc. no. 12 at 5, SOF 26.

[18]*See id.*, SOF 27.

[19]*See id.*, SOF 28, 30.

[20]*See id.*, SOF 26, 29.

Plaintiff's VA progress notes also contain a vocational evaluation performed by Counseling Psychologist, Thomas McNutt, on April 13, 2004.[21]  McNutt opined that plaintiff, when faced with people under certain circumstances, "could potentially become violent," rendering plaintiff markedly impaired in his ability to respond appropriately to supervisors and co-workers, and stating that plaintiff was moderately impaired in the ability to follow instructions.[22]  McNutt concluded that plaintiff was unemployable.[23]

Dr. Center found that neither plaintiff's medical records, nor Dr. Center's case review with Wilder, identified any signs of specific psychiatric symptoms that would render plaintiff disabled from his own occupation.[24]  Based on her review of plaintiff's records and her conversation with plaintiff's nurse practitioner, Dr. Center opined that plaintiff was not totally disabled from his own occupation.[25]

In response to plaintiff's appeal of the denial of his benefit claim, Wausau commissioned a second board-certified psychiatrist, Bettina B. Kilburn, M.D., to conduct an independent review of plaintiff's claim.[26]  Dr. Kilburn reviewed the

---

[21]See id. at 6, SOF 36.

[22]See doc. no. 12 at 6, SOF 39.

[23]See id., SOF 40.

[24]See id. at 7, SOF 46-48.

[25]See id. at 3, 8, SOF 10, 49.

[26]See id. at 9, SOF 56.

following records:  VA clinical notes for the time period January 22, 2004 through August 10, 2004; Wilder and Berry's February 23, 2004 letter; Wilder and Berry's attending physician statement dated March 27, 2004; Wausau's medical case management notes; Dr. Center's June 4, 2004 independent physician review; plaintiff's June 12, 2004 SSA Notice of Award; plaintiff's June 23, 2004 letter appealing the initial denial of S&A benefits; and plaintiff's job description.[27]  Dr. Kilburn also attempted to speak with plaintiff's treating physician and nurse practitioner on three occasions, but received no response.[28]

Dr. Kilburn found that the notes regarding plaintiff's participation in the VA PTSD day program did not contain defined mental status exam findings, nor a discussion of plaintiff's specific daily activities or capabilities.[29]  Dr. Kilburn noted that there was no clinical documentation for the period April 23, 2004 through August 10, 2004, except for an August 10, 2004 progress note from Dr. Berry.[30]

Dr. Berry's August 10, 2004 progress note,  made after a twenty-minute session with plaintiff, states that plaintiff reported problems focusing and concentrating on task, problems sleeping, and nightmares.[31]  Dr. Berry opined that plaintiff was totally

---

[27]*See* doc. no. 12 at 9, SOF 57.

[28]*See id.*, SOF 58.

[29]*See id.*, SOF 59.

[30]*See id.*, SOF 60.

[31]*See id.*, SOF 61.

and permanently disabled.[32]   As Dr. Kilburn found, Dr. Berry's progress note contained no mental status exam findings, no information regarding plaintiff's daily activities or capabilities, and no clinical observations to support his opinion.[33]

Dr. Kilburn concluded that the available documentation did not substantiate a functional impairment that would have precluded plaintiff from performing his job at any point from February 23, 2004 forward.[34]   Dr. Kilburn explained that, while various health care providers opined that plaintiff was totally disabled, their opinions were "not substantiated by mental status exam findings or direct clinical observation; they appear to be driven primarily by claimant's self-report."[35]

During the course of plaintiff's final, voluntary appeal, the Plan Administrator reviewed plaintiff's entire file, including a June 16, 2004 VA Rating Decision that plaintiff submitted for the first time during the final appeal.[36]   The Plan Administrator sent plaintiff's June 16, 2004 VA Rating Decision to the medical management review unit at Wausau, and requested their opinion as to whether the Rating Decision would have any effect on Wausau's prior determination that plaintiff was not totally disabled

---

[32]*See id*., SOF 62.

[33]*See id*. at 9-10, SOF 61-63.

[34]*See* doc. no. 12 at 2, 3, 10, SOF 2-3, 10, 64.

[35]*Id*. at 10, SOF 65.

[36]*See id*. at 10-11, SOF 67-69, 71.

from February 23, 2004 forward.[37]   Wausau's medical management review unit reviewed the June 16, 2004 VA Rating Decision, and informed the Plan Administrator that the Rating Decision did not change Wausau's determination that plaintiff was not totally disabled, because the rating was not a medical record, and it contained no information that was not included in the medical records that Wausau previously reviewed when making its earlier determination that plaintiff was not totally disabled.[38]  The Plan Administrator determined that plaintiff did not satisfy the Plan's definition of "total disability."[39]

## PART THREE

### *Discussion of Plaintiff's Claims*

In response to defendant's motion for summary judgment, plaintiff does not dispute that his claim for breach of fiduciary duty is based upon denial of benefits allegedly due him under the Plan.[40]  Plaintiff further does not dispute that a cause of action for breach of fiduciary duty cannot exist where plaintiff seeks benefits pursuant to an ERISA plan.[41]  Accordingly, plaintiff's claim for breach of fiduciary duty is due to be dismissed.

---

[37]*See id*. at 11, SOF 72.

[38]*See* doc. no. 12 at 11, SOF 73.

[39]*See id*. at 3, 7-10, 11, SOF 10, 44, 50, 56, 66, 72-75.

[40]*See* doc. no. 17 at 3 (defendants' reply).

[41]*See id*.

Plaintiff also does not dispute that defendant Wausau is a third-party administrator that provides administrative services in connection with the Plan; and, as such, Wausau has no responsibility for paying benefits under the Plan.[42]  Thus, all claims against Wausau are due to be dismissed, because Wausau is not a proper party defendant.  *See Baker v. Big Star Division of the Grand Union Co.*, 893 F.2d 288, 289-90 (11th Cir. 1989) (holding that non-fiduciaries cannot be held liable, and that an entity performing administrative functions and claims processing pursuant to rules established by the employer is not a fiduciary).

Finally, plaintiff does not dispute that he is eligible to apply for LTD benefits in the form of disability retirement benefits under the Retirement Plan of International Paper Company due to a November 1, 2005 amendment to the Plan.[43]  Plaintiff has acknowledged that he recently applied for disability retirement, and thus cannot dispute that he has failed to exhaust his administrative remedies with respect to LTD benefits.[44]  Accordingly, plaintiff's claim for LTD benefits is due to be dismissed for failure to exhaust administrative remedies.  *See Counts v. Am. Gen. Life and Accident Insurance Co.*, 111 F.3d 105, 108 (11th Cir. 1997).

As a result of the foregoing conclusions, the court will devote its attention in

---

[42]*See id.* at 4.

[43]*See id.*

[44]*See* doc. no. 15 at unnumbered p. 6, 10 (Plaintiff's response).

this memorandum opinion to the one disputed claim — that of plaintiff's entitlement to Sickness & Accident ("S&A") benefits.  The relevant facts with respect to this claim are not in dispute and will be discussed in the analysis that follows.

In denying plaintiff's claim, Wausau obtained plaintiff's medical records, twice submitted plaintiff's medical records for independent physician review by two different Board Certified Psychiatrists, and twice determined that plaintiff failed to demonstrate an impairment that precluded him from performing the functions of his own occupation, as necessary to demonstrate disability under the International Paper Company Group Health and Welfare Plan ("Plan").[45]  On final appeal, the Plan Administrator considered the entire administrative record, and determined that plaintiff failed to demonstrate that he was disabled.

The first step in reviewing a denial of benefits is to determine if the Plan Administrator's decision was "*de novo* wrong." *Williams v. BellSouth Telecommunications, Inc.*, 373 F.3d 1132, 1137-38 (11th Cir. 2004).[46]  That is, the

---

[45] *See* doc. no. 17 at 1-2.

[46] In *Williams*, the Eleventh Circuit outlined and simplified the proper steps in reviewing all ERISA plan benefit denials:

   (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (*i.e.*, the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

   (2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

11

court must determine whether it disagrees with the administrator's decision; if not, the inquiry ends, and the decision must be affirmed.  *See id*. at 1138.

Although plaintiff concedes that the Plan Administrator was not required to defer to the opinions of his treating physicians, he argues, without citation to any authority, that the decision denying him S&A benefits was, nonetheless, "*de novo* wrong*,*" because the Plan Administrator did not accord greater weight to the opinions of his treating physicians.[47]  Plaintiff emphasizes that the Veterans Administration increased its evaluation of PTSD to 100% disabling effective February 23, 2004, and that the Social Security Administration determined that plaintiff was disabled as of February 23, 2004, under its rules.

First, a determination of the Social Security Administration that a claimant is entitled to disability benefits is not binding on an ERISA plan administrator.  *See*

---

(3) If the administrator's decision is "*de novo* wrong" and he *was* vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict of interest, then apply heightened arbitrary and capricious review to the decision to affirm or deny it.

373 F.3d at 1138 (footnotes and citations omitted).

[47]*See* doc. no. 15 at unnumbered p. 12.

*Paramore v. Delta Air Lines, Inc.*, 129 F.3d 1446, 1452 n.5 (11th Cir. 1997). Likewise, a VA rating decision is not binding on an ERISA plan administrator because veteran's benefit statutes are uniquely pro-claimant, with questions of eligibility resolved in the veteran's favor.   *See Coffy v. Republic Steel Corp.*, 447 U.S. 191, 196 (1980) (noting that the "statute is to be liberally construed for the benefit of the returning veteran"); 38 C.F.R. § 3.102 (2005).

The court agrees with the Plan Administrator's decision to deny plaintiff's clam for S&A benefits because plaintiff's medical records did not substantiate a finding of total disability.[48]  As Dr. Center noted, plaintiff's vocational evaluation contained no details regarding reasons for the proposed limitations.[49]   Indeed, Counseling Psychologist Thomas McNutt's conclusion that plaintiff was potentially violent was at odds with the majority of plaintiff's medical records, which document that plaintiff had no history of violence, and that he was neither suicidal nor homicidal.[50]

Here, independent physician reviewers concluded that the opinions of plaintiff's treatment providers that plaintiff was totally disabled were based upon plaintiff's self-report.   Plaintiff presented no medical evidence substantiating an inability to perform his job.  The Plan Administrator's decision to credit the opinions

---

[48]*See* doc. no. 12 at 4-7, Statement of Facts ("SOF") 18-24.

[49]*See id.* at 6-7, SOF 36-40, 47.

[50]*See id.* at 4-6, SOF 21, 27, 32, 34, 39.

of independent physicians over those of plaintiff's care givers does not render the denial of plaintiff's benefits claim "de novo wrong." *See Corkill v. Hartford Life and Accident Insurance Co.*, 2005 WL 1139915, at *6-*7 (N.D. Fla. April 28,2005). An ERISA Plan Administrator is not required to defer to the opinions of the plaintiff's treating physicians. As the Supreme Court found in *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003), a plan administrator need not explain why it "credit[s] reliable evidence that conflicts with a treating physician's evaluation." The *Nord* Court held that the "treating physician rule," which requires that the hearing officer defer to a claimant's treating physician in determining eligibility for Social Security disability benefits, or to explain why the hearing officer has chosen to credit the conflicting opinion of another health care provider, does not apply to ERISA plan administrators. *Id*. at 834.

Thus, IP's Plan Administrator was free to accord greater weight to the opinions of Dr. Center and Dr. Kilburn, who found that plaintiff was not totally disabled from his own occupation. The Plan Administrator's decision to credit the opinions of Dr. Center and Dr. Kilburn over those of plaintiff's treating physician and nurse practitioner was particularly appropriate, given the conclusions of Dr. Center and Dr. Kilburn that the opinions expressed in plaintiff's medical records were not supported

14

by medical evidence, but instead appeared to be based upon plaintiff's self-reports.[51]
The Plan Administrator's decision denying benefits was not "*de novo* wrong."
Accordingly, defendants' motion for summary judgment is due to be granted.

## Conclusion

In light of the foregoing, defendants' motion for summary judgment is GRANTED.  Plaintiff's claims are dismissed with prejudice.  Costs are taxed against plaintiff.  The clerk is directed to close this file.

DONE this 29th day of June, 2006.

_____
United States District Judge

---

[51]*See* doc. no. 12 at 7-10, SOF 47-49, 59, 63-65.